Good morning, Your Honors. May it please the Court, David Zuckerman, representing Petitioner Jerry Harris. This case presents a classic situation in which equitable tolling is appropriate. The Petitioner's counsel, Cheryl Gordon MacLeod, litigated this case diligently in State court. She was hoping to obtain relief there, but also being very careful to preserve her client's option of seeking Federal habeas relief if necessary. Ms. MacLeod is a very experienced habeas attorney. She carefully calculated the deadlines in reliance on controlling authority from this Court in Dictato v. Ducharme. Unfortunately, the rules changed in mid-game when the U.S. Supreme Court overruled Dictato in Pace v. DiGuglielmo. As the briefs said … What's the best authority you have on tolling? As far as why there should be tolling here? Yeah. I think probably the best case is Bonner v. Carey from the Ninth Circuit. It dealt with precisely this situation. The Petitioner's brief would have been timely under Dictato, but by the time the case got up to the Ninth Circuit, Pace had been decided. And the Court reluctantly acknowledged that under Pace, his State court petition didn't toll the statute, and he was untimely. The Ninth Circuit recognized the harshness and possible unfairness of that and remanded for consideration of equitable tolling. I would note … Is there any other authority for equitable tolling that is coming from a court of appeals anyplace? I'm sorry. Are you asking for cases specifically dealing with this Pace v. DiGuglielmo situation? Yeah. I understand your problem. You got caught in a trap of the Supreme Court saying from, at least from the time of that opinion, it was precedent that you'd be out of court. But because the rule was not in effect at the time we're talking about, there's a differential, you're saying there should be – equity should be applied and he should be permitted to assert his habeas corpus appeal or even case. Well, certainly … That's the best case you've had where that's been done, if any. Is this the original and only case out there? Oh, certainly not, Your Honor. I mean, there are numerous cases from the Ninth Circuit in which a petitioner was either misled about … I want the specific facts of this case, change in law. That's really what happened in the Supreme Court. Isn't your best case the one you cite, the York case from the Tenth Circuit, you know, which involved almost the same thing about the change in the law? I don't have the … You cite that case in your brief, York. I apologize for not being up on that one. You didn't write the brief, did you? Of course. Ms. McLeod wrote the brief. I noticed … Counsel, we appreciate the fact that you came in on relatively short notice here. Thank you, Your Honor. Although, of course, it is my responsibility to be up on this. We do have DeHaye-Zoos v. Miller, 215F sub 2nd, 410, which dealt with the same situation. In that case, it was the decision in Duncan v. Walker that changed a somewhat … that changed the calculation of the deadlines, and the Court said that that was an extraordinary circumstance that merited equitable tolling. Mr. Zuckerman, one of the concerns I have is equitable tolling normally requires extraordinary circumstances, and if we are to rule in your favor and declare that this constitutes an extraordinary circumstance, do we have any idea how many other cases there are out there where counsel will then be coming in and saying, well, we relied on the Ninth Circuit precedent to tell the Supreme Court what to do? Or the law of the day, or some other reason. Yeah. Well, certainly there are numerous cases involving this Pace v. DeGuglielmo situation, and I certainly think it is fair that in all such cases the equitable tolling should apply. Just as the Sixth Circuit … Well, I guess where I'm going with my question is, is that a proper application of the word or the phrase extraordinary circumstance? Absolutely. Does it make it extraordinary? Absolutely, Your Honor. Litigants have a right to … Some people wouldn't think it's extraordinary when the Supreme Court overrules the Ninth Circuit. Doesn't that what happened here? Well, perhaps. But, Your Honors, if litigants cannot rely on controlling authority – and by the way, Dictato was a well-reasoned decision. The Fifth Circuit agreed with it. The State … Certainly, you could rely on it, but you could also, as the magistrate and the district judge pointed out, Petitioner could have filed a protective Federal habeas petition and followed the stay and abeyance procedures, which have been around for quite a while. So there was an alternative. Your Honor, in retrospect, maybe that looks good. At the time, it would have been an – it would have appeared to be both an unnecessary waste of resources for the Petitioner and the courts, and also a very risky procedure. Why? For one thing … What would the risk be to the Petitioner of filing a protective habeas action and asking the court to immediately stay it so that you could exhaust remedies in State court? It would have been a quagmire, and I can explain why. One, the U.S. Supreme Court had yet to approve it. So if Ms. McCloud was not entitled to rely on Dictato, why would she be allowed to rely on the Ninth Circuit cases permitting stay and abeyance? Second, the Ninth Circuit's procedure for stay and abeyance was not exactly the same as later approved in Rines v. Weber. The Ninth Circuit said you could stay, but only if your petition included nothing but completely exhausted claims. Then – and if you had good cause. So if the court grants the stay, then later, after you finish exhausting, you can come back and maybe your petition – your amended petition relates back to the original one. Relation back is a quagmire in itself. Well, that issue went up to the Supreme Court, and we got reversed on that one, too. Exactly. Exactly. So you're in this relation back quagmire. Also, you're in the quagmire of would the court find good cause for a stay? As Justice Souter said in concurrence in Rines v. Weber, quote, the trickiness of some exhaustion determinations promises to infect issues of good cause when a court finds a failure to exhaust. But the cause in this case – and maybe my question is with the benefit of 2020 hindsight – the cause is to allow the state courts to have a full and fair opportunity to address the petitioner's constitutional claim and perhaps grant relief before a federal court has to step in and correct a federal constitutional error that the state courts have refused to correct after being given the opportunity to do so. So I guess my question is, why is that such a strong case for good cause if the whole purpose for stay in abeyance is to give the petitioner the opportunity to exhaust the claim first in state court, which is what habeas law has always required, as I understand the doctrine? I want to be sure I understand your question, because you're giving the very reasons why Ms. McCloud felt it necessary to file her second personal restraint petition. Well, yes, but I'm – but you're suggesting that had she filed a protective federal petition, she wouldn't necessarily have had good cause to file it and then ask for permission to exhaust the unexhausted claim. Because the court might have said – because the issue, according to Rines v. Weather, is there good cause for failing to exhaust sooner. The attorney general would probably have come in and said, no, she doesn't even need to exhaust further. Well, one, they might have come in and said, there's no good cause because dictato says she doesn't need to file for stay in abeyance. So you should deny. But also, there's tricky questions here about exhaustion. She had raised the claims in the first PRP, but then Crawford comes down. I have a case in which the attorney general is arguing that because the Crawford analysis wasn't specifically litigated in State court, that analysis is not exhausted and can't be argued in Federal court, even though a confrontation claim was raised in State court. Mr. Zuckerman, did you want to save some time? I would like to, Your Honor. Thank you. Okay. Why don't we hear from the State then? Thank you. Thank you for your letter of December 11th. Yes, Your Honor. May it please the Court. My name is Greg Rosen. I'm an assistant attorney general, and I represent the respondent in this matter. Mr. Harris's argument that the stay in abeyance procedure pursuant to Rynes v. Weber was unavailable to him is flawed. The reason it is flawed is some of the reasons that Judge Talman has indicated. This Court sanctioned the stay in abeyance procedure way back in 1998 under Calderon v. U.S. District Court, the Taylor decision. I think it followed up with Anthony v. Canberra and Kelly v. Small in 2002. So although it is correct that Rynes v. Weber didn't come out until 2005, this Court had sanctioned stay in abeyance a long time ago, in 1998. In fact, two years before Mr. Harris's State court judgment became final. Would you address the equitable principle that right in the middle of the stream, the fact is the Supreme Court took a turn and the law went 180 degrees in a different direction, and that's what counsel was faced with. That's correct, Your Honor. They're not required to file a stay petition by statute or necessarily even by equity. They have the right to rely on existing law. Now, is it equitable to enforce the rule that's adopted by the Supreme Court two or three months after the fact? She's fired. Your Honor, although it was certainly appropriate for Mr. Harris to rely on this Court's precedent in Dictato, you can't state, as Mr. Harris appears to be claiming, that I'm relying on Ninth Circuit precedent in Dictato, but I'm ignoring all the other Ninth Circuit precedents, such as I just said, Calderon. What's mandatory about Calderon? Well, Calderon allowed her. Permissive. I'm sorry? It's permissive, not mandatory. It is, Your Honor. But as this – as you are well aware, I believe you wrote Dictato, Dictato v. Descharnes the second time. Dictato didn't say – didn't say you could not file a Federal habeas petition. No. It's not prohibitive. No. But certainly, Mr. Harris could have filed a Federal habeas petition. He could have filed a placeholder petition, and if he had, the district court almost certainly would have granted good cause for stay and abeyance. And if they had, he could have gone back to State court, exhausted, without any risk whatsoever of the Federal statute of limitations expiring at that juncture. Well, but is that the question in deciding whether or not – I think Judge Tallman posed the question. Does the change – does the Supreme Court overruling what was controlling precedent in the circuit constitute extraordinary circumstances? No, Your Honor. It does not. Is that the test for extraordinary circumstances? Well, there's – this Court's test of extraordinary circumstances wasn't an extraordinary circumstance beyond the Petitioner's control, which made it impossible. It's certainly beyond Petitioner's control as to what the Supreme Court's going to do. But was it impossible for him to file his habeas petition on time? That's the other part of the extraordinary test that this Court handed down in the Buehler decision. But it wasn't – I mean, he didn't even have an adjudication at the State level. There was no necessity for going – he assumed – or the Petitioner assumed that the State courts would give him relief. And that's what he was after. I mean, he had to go through that step first. Yes, he could have gone through that step, and he certainly went through that step. And it wasn't completed. That's what happened. Well, he filed a second personal restraint petition, which was found to be untimely in State court. He followed that up with a third personal restraint petition, which was also found to be untimely. But as I indicated, he could have protected himself, and Pace expressly discussed this. He could have protected himself and run no risk whatsoever of the Federal statute expiring if he had simply filed a placeholder or protected petition, gone to State court, and exhausted every issue he wished to exhaust. The risk – ironically, the risk was not seeking stay in abeyance. The risk was what Mr. Harris and counsel ultimately chose to do, which was to continuously file State personal restraint petitions without seeking the option of filing a placeholder petition and subsequently seeking good cause for stay in abeyance to further exhaust. They ran the risk of simply filing petitions knowing that the issue that this Court addressed in Dictato was really an open question way back in 2000 when the Supreme Court addressed it in Artoos v. Bennett. My understanding of the law, Your Honor, is that Dictato grew out of Artoos v. Bennett. The Supreme Court stated in Artoos, and I'm quoting with note number two, We express no view on the question whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered and properly filed. So the issue was essentially an open question. And as counsel has pointed out, Ms. McCloud is a very experienced appellate advocate. She had to know that the issue was out there. She certainly knew as of September 28th of 2004, when the Supreme Court granted cert in Pace, that the issue was out there in terms of a conflict between the circuits, between this circuit and the Third Circuit. And yet, despite the fact that cert was granted on 928 of 04, it took counsel and Mr. Harris seven additional months until May of 2005 before filing the Federal habeas petition. So even if this Court applies the other test, I don't want to call it that test, the two-prong test discussed in Pace, that the Petitioner was diligently pursuing his rights, and that some extraordinary circumstance stood in his way, he loses there as well. He doesn't demonstrate diligence, and certainly he doesn't meet the impossibility test handed down by this Court in Wheeler. So although Mr. Harris contends that he detrimentally relied on Dictato, that is, I would submit, a feigned detrimental reliance, because Dictato didn't say, you could not file the Federal habeas petition. He could have done so. He chose, as it turns of litigation choices, he made a deliberate tactical choice not to file a Federal habeas petition. That's a choice. We all make choices in our lives, either personal or professional, or litigation choices. We have to deal with the consequences of those choices. Nothing prevented him from filing the habeas petition. Mr. Rosen, I didn't add up the time periods, but are you arguing that he had essentially run the 365-day clock, if you look at the periods of delay between the filings of his PRPs? Yes, Your Honor, certainly. By my calculations, a total of 722 days ran on the Federal statute of limitations from the time his state court judgment became final. My calculations, because you've asked, Judge Tillman, are based on these dates. On May 29th of 2000, his state court judgment became final. He filed his first personal restraint petition in the state court on February 20th of 2001. So 267 days ran on the Federal statute of limitations without interruption between those two dates. He filed his second personal restraint petition on March 3rd of 2004. That was no longer pending as of October 5th of 2004. His third PRP was filed October 11th of 2004. That was no longer pending as of June 1st of 2005, but he had already filed his federal habeas petition back on May 5th. So the 267 days which ran between the day his state court judgment became final and the day his first personal restraint petition were filed, you then add the amount of time between the time his second, the time between the time his first personal restraint petition was no longer pending, which was February 4th of 2004, through the filing of his federal habeas petition, which was May of 2005, which is a period, by my calculations, about 455 days. So when you add the 267 days to the 455 days, I come out to about 722, or just shy of two years, which would be 730 days. So if we get back to the question, I think it was Judge Beezer asked you earlier, if we look at equitable considerations here to determine whether these are, in fact, extraordinary circumstances, your argument would be that in the face of 722 days of delay, even if counsel was relying on Ninth Circuit case law, it doesn't constitute extraordinary circumstances in this case. That's correct. But I'm also – that's correct, Your Honor. But I'm also applying the entire test. It's not simply extraordinary circumstances. Beeler didn't end the test there, which were beyond his control, and I certainly concede, obviously, the Supreme Court doing something that's beyond his control, which made it impossible to file his petition on time. That's this Court's law. And I would indicate, although I talked about the two-step test earlier with Judge Tashima, the Supreme Court made clear in both Lawrence v. Florida and Pace that they had not adopted that two-step test. And I'll quote, Lawrence v. Florida, the Supreme Court stated, We have not decided whether Section 2244D allows for equitable tolling. And in Pace, the Supreme Court said, We have never squarely addressed the question whether equitable tolling is applicable to the Edpis statute of limitations. The problem, though, is that essentially all they're saying is it's an open question. You can't read it for the proposition that there is no equitable tolling doctrine. At the point where they're saying that, they're not telling the circuits that you are not free to adopt the application of equitable tolling. Certainly. And this Court's rule in Beeler makes clear that this Court has imposed equitable tolling. I want to be absolutely clear on that. Although it's an open question in front of the U.S. Supreme Court, this Court has clearly permitted equitable tolling in a number of situations. None that I'm aware of that directly addresses the Pace situation. Counsel, are you aware of any outstanding case in the Ninth Circuit that's under submission raising the equitable tolling question? I believe there are a number of cases, actually, that my office may be involved with. I don't know where they are specifically in the system, so I don't want to misspeak. Are you familiar with Ruiz v. Sharrock, which has precedence over this case as far as we're concerned? I am not familiar with that case, Your Honor. We may have to defer submission. So, just alerting you. Okay. Mr. Rosen, you may know this, but for benefit of both counsel, we have an internal computer case tracking system that tells different panels when they're assigned cases, if another panel has a case that raises the same issue. Excellent, Your Honor. I believe the issue is in front of the Ninth Circuit somewhere. I don't want to state specifically where, because I don't. But I think the issue – I don't think there are any published decisions from this Court that have addressed it as far as I know. Thank you, Mr. Rosen. I know of only the one case that has precedence to this. Thank you, Your Honor. Mr. Zuckerman. Thank you, Your Honor. First of all, as to calculations, Ms. Gordon-McLeod was well within the one year under the law as it existed at the time. She was very careful about that. The main point I'd like to make – The problem I'm getting at, though, and again, with the benefit of hindsight, we now know in light of R2s and the – I can't remember the name of the other case. I was – I remember I was on the three-judge panel and wrote a dissent. But the problem is that we now know that you don't count those long delays between the filings of state habeas proceedings and that the EDPA clock continues to run. So were it not for the reliance on pace – or dictator, rather, he would have been out of time now on the federal habeas petition. Oh, we certainly can see that. But keep in mind, the law is still that a state petition tolls, even if it's found to be procedurally barred. It's only if the procedural bar is found to be a time bar. And by the way, I still think the State – Which was the case here, was it not? Right. But I think – I mean, she had no – first of all, she had no way of knowing they would find it time barred. I think she was absolutely right that Crawford was a significant change in the law, and Washington has an exception for significant changes in the law. You know, if the Federal court were free to decide whether the State court correctly applied its time bar, I think it would find that it didn't. We've got enough work on habeas now without adding to that. If I could just add one last point in conclusion, Your Honor. There are – this isn't the only issue concerning Federal deadlines that involves court interpretation. There are numerous issues, and they all depend on relying on case law. If Petitioners – if this Court follows the Attorney General's approach here, what message we get is we cannot rely on any case law. Even the U.S. Supreme Court can overturn or limit cases. What that means is that we're going to have to start telling people to file protective petitions way early, way before they have exhausted State options, maybe while the direct appeal is still ongoing. So instead of streamlining litigation, AEDPA will now be requiring massive new filings in Federal court in many cases in which it won't even – in which the State courts will probably grant relief ultimately. The courts will be flooded with habeas petitions filed prematurely and motions for stay and abeyance. And that's what all the litigation is going to turn into if we can't rely on court decisions. Thank you very much. I'd like to apply both counsel for a fine argument. The case just argued is submitted. And we will next hear argument in the case of Independent School District of Boise City v. Courageous Insurance Company.
judges: Beezer, Tashima, Tallman